01

02

03

04

05

06

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

07  DONALD ELLENBERGER,                    )    CASE NO. C06-1310-JLR
                                          )
08        Plaintiff,                       )
                                          )
09        v.                               )    REPORT AND RECOMMENDATION
                                          )    RE: SOCIAL SECURITY
10  MICHAEL J. ASTRUE,                     )    DISABILITY APPEAL
    Commissioner of Social Security,       )
11                                         )
          Defendant.                       )
12  _____ )

13        Plaintiff Donald Ellenberger proceeds through counsel in his appeal of a final decision of

14  the Commissioner of the Social Security Administration (Commissioner).  The Commissioner

15  denied plaintiff's application for Disability Insurance (DI) benefits after a hearing before an

16  Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record

17  (AR), and all memoranda of record, it is recommended that this matter be REMANDED for

18  further administrative proceedings.

19                          **FACTS AND PROCEDURAL HISTORY**

20        Plaintiff was born on XXXX, 1953.[1]  He completed high school and received vocational

21  _____

22        [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
    General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01    training to become a welder.  Plaintiff previously worked as a shipfitter.

02         Plaintiff filed an application for DI benefits in October 2002, alleging disability since

03    January 30, 2002.  (AR 61-63.)  His application was denied at the initial level and he did not seek

04    further review.

05         Plaintiff reapplied for DI benefits in March 2003, alleging disability since August 2, 2002.

06    (AR 64-65.)  This application was denied at the initial level and on reconsideration, and plaintiff

07    timely requested a hearing.  On May 2, 2005, ALJ Cheri Filion held a hearing, taking testimony

08    from plaintiff.  (AR 294-313.)  At the hearing, plaintiff sought to amend his alleged onset date to

09    the day after his fiftieth birthday in July 2003.  (AR 306.)  ALJ Filion issued a decision on

10    November 17, 2005 finding plaintiff not disabled.  (AR 13-22.)  She declined to reopen plaintiff's

11    initial claim and ultimately concluded that plaintiff was not disabled at step five from August 2,

12    2002 through November 30, 2004 and not disabled at step one as of December 1, 2004.  (*Id.*)

13         Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on July

14    21, 2006, making the ALJ's decision the final decision of the Commissioner.  (AR 6-9.)  Plaintiff

15    appealed this final decision of the Commissioner to this Court.

16                                  **JURISDICTION**

17         The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

18                                   **DISCUSSION**

19         The Commissioner follows a five-step sequential evaluation process for determining

20    whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

21

22    official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had engaged

02  in substantial gainful activity (SGA) since December 1, 2004, but had not engaged in SGA

03  between August 2, 2002 and November 30, 2004.  At step two, it must be determined whether

04  a claimant suffers from a severe impairment.  The ALJ found plaintiff's right ankle fracture status

05  post fusion and degenerative changes of the back severe.  She also found that while plaintiff's

06  essential tremor was not a severe impairment prior to December 1, 2004, it worsened and was

07  presently severe.  Step three asks whether a claimant's impairments meet or equal a listed

08  impairment.  The ALJ found that plaintiff's impairments did not meet or equal the criteria for any

09  listed impairment.  If a claimant's impairments do not meet or equal a listing, the Commissioner

10  must assess residual functional capacity (RFC) and determine at step four whether the claimant

11  has demonstrated an inability to perform past relevant work.  The ALJ assessed plaintiff's RFC

12  and found him unable to perform his past relevant work.  If a claimant demonstrates an inability

13  to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five

14  that the claimant retains the capacity to make an adjustment to work that exists in significant levels

15  in the national economy.  Applying the Medical-Vocational Guidelines for the period between

16  August 2, 2002 and November 30, 2004, the ALJ found plaintiff capable of performing the full

17  range of light work and, therefore, not disabled at step five.

18      This Court's review of the ALJ's decision is limited to whether the decision is in

19  accordance with the law and the findings supported by substantial evidence in the record as a

20  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

21  than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

22  mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01   (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

02   decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

03   2002).

04        Plaintiff argues that the ALJ erred in ignoring and/or rejecting opinions of examining

05   physicians, in rejecting the existence of a severe tremor prior to December 2004, in finding that

06   he engaged in SGA since December 2004, and in assessing his credibility.  He requests remand for

07   an award of benefits or, alternatively, for further administrative proceedings. The Commissioner

08   argues that the ALJ's decision is supported by substantial evidence and should be affirmed.  For

09   the reasons described below, the Court finds further administrative proceedings called for in this

10   case.

11   Step One

12      The ALJ found as follows at step one:

13      The claimant is 52 years old and has a high school education and training in welding.
His past work experience includes employment as a shipfitter.  Since February of

14   2004 the claimant has worked as a caregiver for his mother and is paid for these
services through the Department of Social and Health Services' (DSHS) Community

15   Options Program Entry System (COPES).  From February 5, 2004 through
November 30, 2004, DSHS authorized 60 hours of care per month at $8.93 per hour

16   for a total of $535.80 per month, which is below the presumptive threshold for
substantial gainful activity.  Beginning December 1, 2004, 111 hours of care per

17   month were authorized for a total of $999.23 per month paid for caregiver services,
which exceeds the presumptive threshold for substantial gainful activity.  Counsel has

18   argued that the claimant is unable to provide all of the services and that the claimant's
ex-wife and sister provide services  when the claimant is unable to do so as a result

19   of his impairments. COPES records list the claimant's sister as an informal provider
and make no mention the [stet] claimant's ex-wife. The claimant's assigned tasks

20   include assisting his mother with bathing, bed mobility, dressing, eating, getting
around inside and outside the residence, medication management, personal hygiene,

21   using the telephone, toilet use, transfers, and transportation. His sister's assigned
tasks as an informal provider include bathing, finances, and transportation. The

22   medical records reflect that on January 10, 2005 the claimant stated that he was the

01   sole care provider for his mother and that his sisters were of minimal assistance.
02   When contacted by DSHS on April 14, 2005, the claimant reported that he was
performing all of the tasks stated in the service summary. The caregiver services that
03   the claimant provides obviously involve significant physical and mental activities and
he has not alleged any impairment related work expenses. Based on the monthly
04   amounts paid by DSHS for caregiver services, I find that the claimant has engaged in
substantial gainful activity since December 1, 2004 and is therefore not disabled as of
05   that date. I find that the claimant did not engage in substantial gainful activity
between August 2, 2002 and November 30, 2004. As a result, it is necessary to
06   continue with the sequential evaluation.

07   (AR 13 (internal citations to record omitted).) (*See also* AR 18 (discussing plaintiff's work as a

08   caregiver in assessing his credibility).)

09       Generally, in evaluating work activity to determine whether it constitutes SGA, an

10   individual's earnings are the primary consideration. 20 C.F.R. § 404.1574(a)(1). For work

11   performed in 2004, average earnings of more than $810.00 per month are presumptive of SGA.

12   *See* 20 C.F.R. § 404.1574(b) and http://www.ssa.gov/pressoffice/factsheets/colafacts 2005. htm.

13   For work performed in 2005, average earnings of more than $830.00 per month are presumptive

14   of SGA. *Id.*

15       Plaintiff notes that, while the same earning guidelines apply, Social Security regulations

16   distinguish between employees and the self-employed. *Compare* 20 C.F.R. § 404.1574

17   (employees), *with* 20 C.F.R. § 404.1575 (self-employed). He maintains that the ALJ should have

18   treated him as self-employed and deducted "normal business expenses" from his gross income.

19   20 C.F.R. § 404.1575(c). He points to evidence submitted to the Appeals Council showing that

20   he used some of his COPES income to pay for his mother's food, gas, utilities, and other expenses.

21   (*See* AR 282 (declaration from plaintiff's sister indicating that plaintiff's mother received $842.00

22   per month in Social Security benefits, but had expenses well in excess of that amount and

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01   indicating that plaintiff paid for various expenses, including food, gas, car repairs, and cable and

02   telephone bills) and AR 291 (plaintiff's declaration indicating that he used a significant portion of

03   his COPES income to pay for his mother's living expenses, including food, utilities, transportation

04   costs, and miscellaneous personal items).)  Plaintiff also asserts that deductions should have been

05   made for "the reasonable value of any significant amount of unpaid help furnished by [his] spouse,

06   children, or others."  20 C.F.R. § 404.1575(c).  He points to evidence submitted to the Appeals

07   Council indicating that he never bathed or groomed his mother, and that his sister or ex-wife spent

08   from thirty minutes to an hour per day taking care of his mother's personal hygiene.  (*See* AR 281,

09   283, 291.)

10        Plaintiff also argues that the ALJ erred in failing to adequately develop the record on this

11   issue. *See* 20 C.F.R. § 404.944 ("At the hearing, the administrative law judge looks fully into the

12   issues, questions you and the other witnesses, and accepts as evidence any documents that are

13   material to the issues. The administrative law judge may stop the hearing temporarily and continue

14   it at a later date if he or she believes that there is material evidence missing at the hearing.")  He

15   asserts that the ALJ truncated the hearing, rather than taking detailed testimony on this issue, and

16   suggested that plaintiff could provide further testimony at a supplemental hearing, which was

17   never held.  (*See* AR 310-11.)

18        The Commissioner notes that the declarations submitted to the Appeals Council were not

19   before the ALJ and avers that such evidence should only be reviewed to determine whether a

20   remand is necessary to allow the ALJ to consider the evidence, not for an award of benefits. *See*

21   *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("While we properly may consider the

22   additional evidence presented to the Appeals Council in determining whether the Commissioner's

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01  denial of benefits is supported by substantial evidence, it is another matter to hold on the basis of

02  evidence that the ALJ has had no opportunity to evaluate that Appellant is entitled to benefits as

03  a matter of law.") The Commissioner argues that the evidence submitted to the Appeals Council

04  would not have changed the outcome in this case.  He notes that the ALJ already considered

05  plaintiff's argument that his ex-wife and sister provided certain services.  The Commissioner

06  further asserts that the expenses identified do not qualify as impairment related work expenses

07  (IRWE) as defined in Social Security Ruling (SSR) 84-26 ("An IRWE means an expense for an

08  item or service which is directly related to enabling an impaired individual to work and which is

09  necessarily incurred by that individual because of a physical or mental impairment.").  He states

10  that the issue is not how plaintiff spent his earnings, but his ability to perform SGA, which is

11  demonstrated both by his own statements and his earnings.

12      Plaintiff does not argue that he had any IRWE.  However, he also does not establish that

13  the ALJ erred with respect to the issue of business expenses.  That is, while plaintiff clearly gave

14  his mother money to pay for her expenses, these payments were not his own "normal business

15  expenses."  For example, plaintiff indicates that he paid for his mother's transportation costs, not

16  that he used his COPES income to pay for his own transportation costs necessary to the care for

17  his mother.  (*See* AR 291.)  In fact, it appears that, at least for some period of time, plaintiff lived

18  in his mother's home.  (*See* AR 279-80, 297.)

19      Also, the ALJ appropriately relied on contrary evidence in the record to discount plaintiff's

20  assertion as to services provided by his sister and ex-wife.  With respect to these services, the

21  Court clarifies that plaintiff attested that he did not bathe or assist in bathing his mother due to

22  issues of privacy, not because he was unable to do so because of his impairments.  (*See* AR 291;

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01 | *see also* AR 281.)

02 |      Finally, plaintiff's argument that the ALJ failed to adequately develop the record on this

03 | issue is not well taken.  The ALJ did indicate that she would hold a supplemental hearing if

04 | necessary.  (*See* AR 310.)  Yet, she also took some testimony on the issue of plaintiff's work  as

05 | a caregiver and his COPES income (*see* AR 299-302, 311), raised her concerns as to this work

06 | and income (*see* AR 307, 312), and indicated that she needed more information on this issue (*see*

07 | AR 307, 309-12). Plaintiff subsequently submitted a substantial amount of relevant documentation

08 | (*see* AR 58, 139-204), which the ALJ relied on in making her decision (*see* AR 14).  Also, the ALJ

09 | informed plaintiff of his right to request a supplemental hearing in a letter dated four months prior

10 | to her decision (*see* AR 59-60), but it does not appear plaintiff ever made such a request.  Finally,

11 | plaintiff submitted his declaration and the declaration from his sister to the Appeals Council, after

12 | the ALJ's decision.  (*See* AR 279-91.)

13 |      Given all of the above, the undersigned concludes that plaintiff fails to demonstrate any

14 | error in the ALJ's step one finding.  This finding is supported by substantial evidence and should

15 | be upheld.

16 | <u>Step Two</u>

17 |      At step two, a claimant must make a threshold showing that his medically determinable

18 | impairments significantly limit his ability to perform basic work activities.  *See Bowen v. Yuckert*,

19 | 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities"

20 | refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b),

21 | 416.921(b).  "An impairment or combination of impairments can be found 'not severe' only if the

22 | evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01  ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting SSR 85-28).

02  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."  *Id.*

03  (citing *Bowen*, 482 U.S. at 153-54).  An ALJ is also required to consider the "combined effect"

04  of an individual's impairments in considering severity.  *Id.*

05      Plaintiff argues that the ALJ erred in considering his tremor at step two.  In an October 10,

06  2004 examination, Greg McGriff, ARNP, stated: "The patient has very fine tremors which are

07  bothersome but not distressing and there are no other associated symptoms of any sort."  (AR

08  236.)  In a January 10, 2005 examination with ARNP McGriff, plaintiff reported "a history of

09  tremors, which are annoying but not distressing."  (AR 233.)  During a June 2005 consultative

10  examination with Dr. Aigner, performed at the request of the ALJ, plaintiff reported that his

11  tremor began eight to ten years ago and was "getting worse."  (AR 254.)  He indicated that this

12  was one reason he had to leave his position as a ship fitter and that he drops things, but that he had

13  never had the tremor evaluated.  ( *Id.*)  On examination, Dr. Aigner observed "a tremor of the

14  outstretched hands, which increases slightly on finger/nose/finger testing."  (AR 257.)  Dr. Aigner

15  also stated: "[H]is tremor is quite marked and occurs with coordinated activity."  (AR 258.)  Dr.

16  Aigner diagnosed plaintiff with "an essential tremor, which is hereditary and affects his upper

17  extremities," adding that "[i]t occurs with any activity requiring the use of his arms and hands[,]"

18  and that "[a] combination of his pain and the tremor contributes to his disability."  (AR 258-59.)

19      In considering plaintiff's tremor, the ALJ found:

20  His essential tremor is presently a severe impairment.  However, the record contains
    no mention of this condition prior to October of 2004 and it was not until June of
21  2005 that Dr. Aigner opined that the tremor would impact coordination.  On January
    10, 2005, Nurse McGriff described the claimant's tremor as annoying, but not
22  distressing.  I therefore find that the claimant's essential tremor was not a severe

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01  impairment through December 1, 2004, when he began engaging in substantial gainful

activity.

02

03  (AR 18 (internal citation to record omitted).) (*See also* AR 21 ("His essential tremor was not a

04  severe impairment prior to December 1, 2004, although is has since worsened and is presently

05  severe.")) She also noted, in assessing plaintiff's credibility: "At the evaluation with Dr. Aigner

06  the claimant reported that his tremor made it difficult to cut straight lines in his work as a

07  shipfitter. However, I do not credit this since the claimant does not mention a tremor on his

08  disability reports or at the evaluation with Dr. Ho." (AR 18.)

09  Plaintiff argues that, if the Court agrees that substantial evidence does not support the

10  ALJ's step one finding as of December 1, 2004, the Court should hold that substantial evidence

11  would not support the ALJ's decision with respect to that time period given the acknowledged

12  severity of his tremor at some point after that same date. Plaintiff also argues that substantial

13  evidence does not support the step two finding prior to December 1, 2004. He equates his

14  January 2005 statement that his tremor was "annoying" (AR 233) with an assertion that it

15  interfered with his functioning. He also criticizes the ALJ's reliance on the lack of prior

16  documentation, averring that the record supports the conclusion that he was enduring a

17  longstanding, hereditary condition which had previously interfered with his work as a shipfitter.

18  (*See* AR 233, 258 & 264.)

19  The Commissioner argues that Dr. Aigner's report does not support a severe tremor prior

20  to December 1, 2004, noting that Dr. Aigner's opinions were rendered during the time plaintiff

21  was found to be performing SGA. The Commissioner clarifies that plaintiff informed ARNP

22  McGriff that his tremor was annoying, not that it interfered with his functioning. He also notes

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01 that none of the records cited by plaintiff indicate that his tremor was severe prior to December

02 1, 2004.

03      Plaintiff fails to establish any error with respect to his tremor.  Rather than helping his

04 argument, the reports to ARNP McGriff minimize the severity of this condition.  Also, while

05 substantiating the severity of the condition as of June 2005, Dr. Aigner's report speaks to the

06 history of plaintiff's tremor only as reported by plaintiff.  As such, the undersigned concludes that

07 the ALJ's step two finding is supported by substantial evidence and should be upheld.[2]

08                                   Physicians' Opinions

09      In general, more weight should be given to the opinion of a treating physician than to a

10 non-treating physician, and more weight to the opinion of an examining physician than to a non-

11 examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted

12 by another physician, a treating or examining physician's opinion may be rejected only for "'clear

13 and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

14 Where contradicted, a treating or examining physician's opinion may not be rejected without

15 "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

16 *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  Where the opinion

17 of the treating physician is contradicted, and the non-treating physician's opinion is based on

18 independent clinical findings that differ from those of the treating physician, the opinion of the

19 non-treating physician may itself constitute substantial evidence. *See Andrews v. Shalala*, 53 F.3d

20

21      [2] In the opening brief, plaintiff's counsel states that the ALJ "conceded" that plaintiff's
tremor became severe at a certain point and "admitted" an impact on her RFC finding.  (*See* Dkt.
22 12 at 13-14.)  This terminology is inappropriately used with respect to the ALJ, who makes
findings and reaches conclusions, rather than the Commissioner, who is a party to this case.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01  1035, 1041 (9th Cir. 1995).  It is the sole province of the ALJ to resolve this conflict.  *Id.*

02      "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of

03  a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*,

04  81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true,

05  plaintiff's condition met a listing) (quoting  *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.

06  1989)).  Crediting an opinion as a matter of law is appropriate when, taking that opinion as true,

07  the evidence supports a finding of disability.  *See, e.g.*, *Schneider v. Commissioner of Social Sec.

08  Admin.,* 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given

09  the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's]

10  functional limitations is sufficient to meet or equal [a listing.]"); *Smolen*, 80 F.3d at 1292 (ALJ's

11  reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony

12  legally insufficient; finding record fully developed and disability finding clearly required).

13      However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v.

14  Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there

15  were insufficient findings as to whether plaintiff's testimony should be credited as true).  As stated

16  by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon

17  an undeserving, able claimant."  *Barbato v. Commissioner of Soc. Sec. Admin.*, 923 F. Supp.

18  1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good faith

19  error, in that some of his stated reasons for rejecting a physician's opinion were legally

20  insufficient).

21  A.    Dr. Marie Ho

22      Plaintiff argues that the ALJ failed to account for the June 2003 opinion of examining

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01    physician Dr. Marie Ho as to his slow and stiff gait.  (AR 220, 222 ("He is limited to standing and

02    walking cumulatively six hours in an eight-hour day due to limitations and pain of the right ankle

03    and lumbar spine.  The claimant has a slow and stiff gait with a slight limp."))  Plaintiff notes the

04    ALJ's finding that he could perform a full range of light work, which requires the ability to stand

05    and/or walk for a total of six hours in an eight-hour day.  *See* SSR 83-10.  He asserts that Dr. Ho

06    essentially opined that his ability to stand and/or walk was significantly reduced by his ability to

07    walk only with a slow and stiff gait.

08         Plaintiff first argues that the ALJ erred in not giving any reason to reject Dr. Ho's opinion

09    as to the pace and style of his gait, noting that she did assign substantial weight to Dr. Ho's

10    opinions generally.  (*See* AR 17.)  Plaintiff asserts that substantial evidence, therefore, does not

11    support the RFC assessment.  Plaintiff next argues that, given his slow and stiff gait, the ALJ erred

12    in not consulting a vocational expert at step five.  *See, e.g., Tackett v. Apfel*, 180 F.3d 1094,

13    1101-04 (9th Cir. 1999) ("The ALJ may rely on the grids alone to show the availability of jobs for

14    the claimant 'only when the grids accurately and completely describe the claimant's abilities and

15    limitations.'"; where a claimant has a significant limitation not contemplated by the Medical-

16    Vocational Guidelines, an ALJ must call a vocational expert) (quoting *Jones v. Heckler*, 760 F.2d

17    993, 998 (9th Cir. 1985)).

18         The Commissioner concedes that the ALJ did not provide a reason to reject Dr. Ho's

19    opinion as to plaintiff's "slow and stiff gait with a slight limp[]" (AR 222), but maintains that any

20    error should be deemed harmless in that it was inconsequential to the ultimate nondisability

21    determination in this case.  *See Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1056

22    (9th Cir. 2006) (an error may be deemed harmless where it is "irrelevant to the ALJ's ultimate

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01  disability conclusion.") That is, he asserts that Dr. Ho took into consideration plaintiff's slow and

02  stiff gait with a slight limp in assessing his ability, including an ability to stand and walk for six

03  hours in an eight hour day, and did not indicate that the slow and stiff gait with a slight limp

04  significantly reduced plaintiff's ability to perform as such.  The Commissioner further maintains

05  that, because Dr. Ho's assessment of plaintiff's abilities corresponds to the abilities necessary to

06  perform the full range of light work, the ALJ properly applied the Medical-Vocational Guidelines

07  at step five.

08      In reply, plaintiff asks that the Court reject the Commissioner's attempt to conflate the

09  total amount of standing and/or walking a claimant can perform with how fast the claimant

10  ambulates.  He points to unskilled light jobs in which an individual's pace would be highly

11  relevant.  *See, e.g.,* Dictionary of Occupational Titles (DOT) No. 311.677-010 (counter attendant,

12  cafeteria; duties include: "Carries trays from food counters to tables for cafeteria patrons. Carries

13  dirty dishes to kitchen. . . . May circulate among diners and serve coffee and be designated Coffee

14  Server[.]"); and DOT No. 323.687-014 (cleaner, housekeeping; duties include: "Cleans rooms and

15  halls in commercial establishments . . . , performing any combination of following duties: Sorts,

16  counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses

17  and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture,

18  hangs drapes, and rolls carpets.") Plaintiff also rejects the contention that the ALJ accounted for

19  the additional limitations in assessing plaintiff's abilities, noting again that Dr. Ho opined: "He is

20  limited to standing and walking cumulatively six hours in an eight-hour day due to limitations and

21  pain of the right ankle and lumbar spine.  The claimant has a slow and stiff gait with a slight limp."

22  (AR 222.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01      Dr. Ho did not note plaintiff's slow and stiff gait with a slight limp, but nonetheless find

02  him able to stand and/or walk to the extent required in light work.  Instead, she found plaintiff able

03  to stand and walk for the duration required in light work and added an observation – a slow and

04  stiff gait with a slight limp.  The ALJ noted Dr. Ho's opinion as to a slow and stiff gait, but did

05  not address this opinion in assessing plaintiff's RFC.  (*See* AR 15, 19-20.)  Dr. Ho rendered his

06  opinions in June 2003 and, therefore, his opinion as to plaintiff's slow and stiff gait with a slight

07  limp is pertinent to the time period prior to plaintiff's performance of SGA.  The undersigned

08  concludes that the ALJ's failure to directly address this opinion is an error necessitating remand

09  for further consideration of the opinions of Dr. Ho and plaintiff's RFC.  As argued by plaintiff, to

10  the extent the ALJ accepts this opinion and to the extent it constitutes a significant limitation not

11  contemplated by the Medical-Vocational Guidelines, a vocational expert will be required at step

12  five.  *See, e.g., Tackett*, 180 F.3d at 1101-04.

13  B.    Dr. B. Robert Aigner

14      Plaintiff also argues that the ALJ erroneously rejected the opinions of Dr. B. Robert

15  Aigner.  Dr. Aigner found that plaintiff could lift only ten pounds, could stand and/or walk less

16  than two hours in an eight-hour day, could sit less than six hours in an eight-hour day, could never

17  climb, balance, kneel, crouch, crawl, or stoop, had a limited ability to reach, handle, and finger,

18  and should avoid hazards.  (*See* AR 262-65.)  Dr. Aigner found that "[t]he combination of his

19  complaints makes his [sic] significantly impaired."  (AR 259.)

20      The ALJ described Dr. Aigner's evaluation and indicated that he did "not assign significant

21  weight to Dr. Aigner's opinion regarding the claimant's physical limitations."  (AR 16-17.)  He

22  explained:

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01     [Dr. Aigner] opined that the claimant could lift and/or carry only 10 pounds occasionally, but the claimant indicated he could lift 30 to 40 pounds. The claimant

02     continued to work as a caregiver at the time of that evaluation and his duties obviously exceed the functional limits opined by Dr. Aigner. Dr. Aigner also opined

03     that the claimant's essential tremor was significant with respect to controlling coordinated activities. However, the medical records contain no mention of the

04     tremor prior to October of 2004, which was only a couple of months before the claimant's work as a caregiver increased to the level of substantial gainful activity.

05

06 (AR 17 (internal citations to record omitted).)

07        Plaintiff notes that Dr. Aigner's findings correspond to a less than full range of sedentary

08 work. *See* SSR 83-10 and 96-9p (sedentary work requires the ability to lift no more than ten

09 pounds, to stand and/or walk for a total of about two hours a day, and to sit for a total of about

10 six hours in a day). He further notes that an individual with these limitations and his vocational

11 profile is disabled at step five as a matter of law. *See* 20 C.F.R. pt. 404, Subpt. P, App. 2, Table

12 1, Rule 201.14 (an individual limited to sedentary work, closely approaching advanced age, with

13 a high school degree or more and no transferable skills is disabled).

14        Plaintiff argues that the ALJ failed to give sufficient reasons for rejecting Dr. Aigner's

15 opinions. He first notes that, unlike Dr. Ho or the non-examining state-agency physicians, Dr.

16 Aigner reviewed x-ray evidence. (*See* AR 252-58.) He maintains the relevance of the May 2005

17 x-rays to the earlier time period given that they revealed degenerative changes, not traumatic

18 injuries sustained after December 1, 2004. (*See* AR 246-47.) Plaintiff next avers that the ALJ

19 failed to grapple with many of the objective findings Dr. Aigner noted, including a reduced

20 forward flexion and an inability to stoop. (*See* AR 256, 263.) Plaintiff also asserts that the ALJ

21 unreasonably found Dr. Aigner's ten-pound lifting limit unwarranted based on plaintiff's admission

22 that he could lift thirty or forty pounds. He notes that RFC refers to the ability to work on a

01 sustained basis, for eight hours a day, five days per week or an equivalent schedule, *see* SSR 96-

02 8p, and that, in an April 2003 questionnaire, he merely stated that he could "sometimes maybe on

03 a good day" lift thirty pounds (AR 117).  Finally, plaintiff takes issue with the ALJ's reliance on

04 the fact that he cared for his mother, in that he alleges that activity never approached the level of

05 full-time, sustained work contemplated by SSR 96-8p.  *See also supra* at 9-11 (discussing Dr.

06 Aigner's opinion regarding plaintiff's tremor).

07        The Commissioner concedes that the ALJ erred in stating that plaintiff reported an ability

08 to lift forty pounds, but argues that this error was harmless given that plaintiff never reported

09 difficulty lifting twenty pounds – as is occasionally required with light work.  *See* SSR 83-10 (light

10 work requires lifting no more than twenty pounds at a time, with frequent lifting of up to ten

11 pounds).   The Commissioner also notes that, although stating he could lift thirty pounds

12 "sometimes maybe on a good day[,]" plaintiff on the same form indicated he could lift that amount

13 occasionally.  (AR 117.)  He clarifies that the ALJ here pointed out that plaintiff's work as a

14 caregiver exceeded the functional limits opined by Dr. Aigner, not that it approached the level of

15 full-time work.  Pointing to all of these reasons, the Commissioner asserts that an ALJ may reject

16 a doctor's opinions when inconsistent with a claimant's activities, *see Rollins v. Massanari*, 261

17 F.3d 853, 856 (9th Cir. 2001), and with medical reports in the record, *see Lester*, 81 F.3d at 831.

18 The Commissioner also disputes the relevance of Dr. Aigner's consideration of x-rays from 2005

19 and various objective findings, noting that the ALJ, in any event, found plaintiff had engaged in

20 SGA since December 1, 2004.  *See* 20 C.F.R. § 404.1520(b) ("If you are working and the work

21 you are doing is substantial gainful activity, we will find that you are not disabled <u>regardless of</u>

22 <u>your medical condition</u> or your age, education, and work experience.") (emphasis added).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01      In reply, plaintiff avers that the ALJ never found Dr. Aigner's opinions irrelevant based on

02 the fact that plaintiff was performing SGA at the time, but declined to assign them significant

03 weight on that basis.  He adds that the ALJ did not find Dr. Aigner's opinions irrelevant to the

04 period prior to December 1, 2004, when the ALJ found he was not performing SGA.  He clarifies

05 that his ability to lift thirty pounds "occasionally" was also qualified by his statement "sometimes

06 maybe on a good day[.]" (AR 117.)

07      As asserted by plaintiff, his qualification "sometimes maybe on a good day" is reasonably

08 read to apply to both the amount and frequency of his lifting abilities.  (*See id*.)  As such, the

09 ALJ's first reason for not assigning significant weight to Dr. Aigner's opinions does not withstand

10 scrutiny.  However, plaintiff does not demonstrate error with respect to the other two reasons

11 provided by the ALJ.  As argued by respondent, the ALJ stated that plaintiff's work as a caregiver

12 exceeded the functional limits opined by Dr. Aigner, not that it approached the level of full-time

13 work, and the ALJ may rely on such inconsistencies in assessing a doctor's opinions, *see Rollins*,

14 261 F.3d at 856.  Also, given the ALJ's step one and step two findings, she did not err in

15 questioning Dr. Aigner's opinion as to plaintiff's tremor based on the lack of prior medical

16 evidence and his work as a caregiver.  Accordingly, the undersigned concludes that the ALJ

17 provided sufficient reasons for not assigning significant weight to Dr. Aigner's June 2005

18 opinions.  However, on remand, the ALJ should correct the error with respect to plaintiff's

19 admission of his lifting capabilities.

20                                                    Credibility

21      Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

22 reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  *See*

01   *also Thomas*, 278 F.3d at 958-59.  In finding a social security claimant's testimony unreliable, an

02   ALJ must render a credibility determination with sufficiently specific findings, supported by

03   substantial evidence.  "General findings are insufficient; rather, the ALJ must identify what

04   testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81

05   F.3d at 834.  "We require the ALJ to build an accurate and logical bridge from the evidence to her

06   conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."

07   *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the

08   ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between

09   his testimony and his conduct, his daily activities, his work record, and testimony from physicians

10   and third parties concerning the nature, severity, and effect of the symptoms of which he

11   complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

12         The ALJ rendered the following credibility decision in this case:

13   In weighing the claimant's subjective complaints against the objective evidence, I find
     that he is not entirely credible.  His impairments would reasonably be expected to
14   cause some pain and limitation.  However, his daily activities demonstrate that he is
     more functional than alleged.  The claimant initially stopped working as a result of a
15   lay off, which he attributed to both a lack of work and to his impairments. On his first
     disability report he stated that he did not know how he could continue to work as a
16   shipfitter which was very physically demanding.  This is consistent with the medical
     evidence given Dr. Talbot's and Nurse McGriff's opinions.  However, no doctor or
17   other health care professional of record opined that the claimant's impairments
     precluded all work prior to December 1, 2004, when his work as a caregiver became
18   substantial gainful activity.  At the hearing, counsel moved to amend the alleged
     disability onset date to the date of the claimant's 50th birthday and noted that the
19   claimant received unemployment compensation until that time.  In order to receive
     such benefits, the claimant had to certify that he was ready, willing, and able to work.
20   The fact that the claimant previously claimed that he could work during the same
     period in which he now alleges disability detracts from his credibility.  I agree that the
21   claimant can no longer work as a shipfitter, and I do not doubt that his layoff was in
     part due to his physical limitations, however, the inability to engage in his past heavy
22   work is not dispositive of the case.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -19

01    The claimant's work as a caregiver and his other daily activities demonstrate that he
02    remains fairly capable despite his impairments. His activities include assisting his
      mother, preparing meals, grocery shopping, driving, performing housework, and
      pulling weeds. The claimant has asserted that he requires assistance in his duties as
03    a caregiver as a result of his impairments. However, he is the primary caregiver for
      his mother and on more than one occasion complained that he received little
04    assistance in this regard. On January 2, 2005, the claimant described himself as the
      sole caregiver and complained that his sisters were of minimal assistance. His ex-
05    wife did not live with him for a time and she is not listed as an informal provider. When
      the claimant was contacted by DSHS on April 14, 2005, he reported that he was
06    performing all of the tasks stated in the service summary. Clearly, he is representing
      himself out to the state as the primary caretaker for which he is accepting payment
07    from the state. His testimony in this forum is inconsistent with his paid status with the
      State of Washington and is not accepted. I note that his duties as a caregiver include
08    assisting his mother with mobility and getting around inside and outside the residence.
      These duties are consistent with medium level work described in the <u>Dictionary of</u>
09    <u>Occupational Titles</u> (Home attendant, DOT # 354.377-014).

10    There are additional factors that erode the claimant's credibility. The claimant did not
      take anything stronger than ibuprofen for his pain prior to October of 2004. He
11    subsequently reported some improvement with Indocin and Robaxin and did not feel
      that he needed narcotic pain medication. The claimant testified that he used a cane
12    for balance, but this was not prescribed by a doctor. Dr. Ho opined that a cane was
      not medically necessary. I note that the claimant's ability to assist his mother in
13    getting around indicates that he does not require a cane for support. At the evaluation
      with Dr. Aigner the claimant reported that his tremor made it difficult to cut straight
14    lines in his work as a shipfitter. However, I do not credit this since the claimant does
      not mention a tremor on his disability reports or at the evaluation with Dr. Ho.

15

16    (AR 17-18 (internal citations to record omitted).)

17          Plaintiff first asserts error in the ALJ's reliance on a purported inconsistency between his

18    applications for unemployment and disability benefits. He notes that he amended his alleged onset

19    date to his fiftieth birthday in July 2003 to defeat such an inconsistency. ( *See* AR 306 (at the

20    hearing, plaintiff's counsel acknowledged that plaintiff received unemployment benefits for about

21    a year after his final layoff and moved to amend his onset date to the day after his fiftieth

22    birthday).) Further, he argues that there is no necessary inconsistency, stating that he is disabled

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -20

01  as a matter of law at step five even if he can perform every sedentary level job in the State of

02  Washington.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.14.  *See also* 20 C.F.R.

03  § 416.210(a)-(b) (an individual is not eligible for Supplemental Security Income benefits if he or

04  she does not apply for all other benefits, including unemployment, for which he or she is eligible).

05      Plaintiff also asserts error in the ALJ's assertion that he was performing "medium" level

06  work caring for his mother.  He points to Dr. Aigner's findings, including difficulty in standing,

07  walking, and using his hands (*see* AR 259), as strong evidence that he was not performing SGA.

08  He also asserts the absence of any evidence that his work for his mother approached medium level

09  work eight hours a day, for five days a week.

10      The Commissioner argues that the ALJ properly relied on inconsistencies in evaluating

11  plaintiff's credibility.  *See*, *e.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  He

12  notes the absence of any authority for the proposition that the ALJ was bound to accept an

13  amended onset date, and argues that the ALJ, in any event, provided appropriate rationale for the

14  entire time period at issue in this case.  Additionally, in response to plaintiff's argument that he is

15  disabled as a matter of law, the Commissioner notes that the ALJ found plaintiff able to perform

16  light, not sedentary work.  He also points to the ALJ's other reasons for finding plaintiff not fully

17  credible, including evidence as to his daily activities, his medication, his use of a cane, his ability

18  to assist his mother, and the absence of prior evidence as to a tremor.

19      In reply, plaintiff notes that claimants routinely amend alleged onset dates.  *See* Program

20  Operations Manual System (POMS) DI § 25501.001 ("A change in the [alleged onset date

21  (AOD)] may be provided on an SSA-5002, a letter, or in another document.") and POMS DI §

22  25501.050 ("Onset development may be undertaken to set an onset earlier or later than the AOD,

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -21

01   if warranted by the medical and/or vocational evidence.")  Plaintiff also asserts that affirming the

02   ALJ's credibility decision would be premature given that the ALJ failed to properly evaluate x-ray

03   and other objective evidence.

04           Plaintiff is permitted to amend his alleged onset date.  However, this does not mean the

05   ALJ cannot find the fact that plaintiff earlier alleged disability at a time when he had also asserted

06   his qualification for unemployment compensation detracted from his credibility.  Nor did the ALJ

07   err in finding an inconsistency between plaintiff's purported degree of impairment and his daily

08   activities, including his care for his mother.  Moreover, as noted by the Commissioner, the ALJ

09   also cited several other reasons in support of his credibility determination.  Plaintiff does not

10   demonstrate any error with respect to those reasons.  As such, the undersigned concludes that the

11   ALJ provided clear and convincing reasons for finding plaintiff not entirely credible.

12           However, given the ALJ's error with respect to Dr. Ho, and the resulting implication on

13   the RFC assessment and probable need for vocational expert testimony at step five, the ALJ's

14   credibility decision may be implicated and require reassessment on remand.  Also, although the

15   ALJ did not err in noting an inconsistency between plaintiff's earlier assertion as to his disability

16   onset date and assertions he made in order to qualify for unemployment compensation, she should,

17   on remand, only consider plaintiff's claim for benefits as of the day after his fiftieth birthday in July

18   2003, his amended alleged onset date, through November 30, 2004.

19   / / /

20   / / /

21   / / /

22   / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -22

01

**CONCLUSION**

02        For the reasons set forth above, this matter should be REMANDED for further

03  administrative proceedings.

04        DATED this 27th day of June, 2006.

05

06        _____
          Mary Alice Theiler
          United States Magistrate Judge

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -23